UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

A.P. MOLLER-MAERSK A/S
d/b/a MAERSK SEALAND,

Plaintiff,

06 Civ. 2778

-against-

OPINION

OCEAN EXPRESS MIAMI; CARGA GLOBAL,
SOCIEDAD ANONIMA; CANIZ INTERNA-
TIONAL CORPORATION; CANIZ LOGISTICA,
SOCIEDAD ANONIMA; and COMERCIALIZADORA
DE CALIDAD, SOCIEDAD ANONIMA
(A.K.A. QUALITY PRINT),

Defendants.

-------------------------------------X

A P P E A R A N C E S:

Attorneys for Plaintiff

FREEHILL, HOGAN & MAHAR, LLP
80 Pine Street
New York, NY 10005
By: Eric Einar Lenck, Esq.
    Willaim Joseph Pallas, III, Esq.

Attorneys for Defendant, Ocean Express Miami

DOUGHERTY, RYAN, GIUFFRA, ZAMBITO & HESSION
131 East 38th Street
New York, NY 10016
By: Peter J. Zambito, Esq.

Attorneys for Defendant, Comercializadora
De Calidad, S.A.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza, 24th Floor
New York, NY 10112
By: Lisa M. Lewis, Esq.
    Elizabeth M. Rotenberg-Schwartz, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/25/08

**Sweet, D.J.**

Defendant Commercializadora De Calidad, S.A. ("Quality Print" or the "Defendant") has moved pursuant to Rule E(4)(f) to vacate the attachment obtained by plaintiff A.P. Moller-Maersk A/S ("Maersk" or the "Plaintiff") and pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss the Second Amended Complaint ("SAC") for lack of subject matter jurisdiction and failure to state a claim. For the reasons set forth below, the motion is denied.

The dispute arises out of the intended shipment from Milwaukee to Guatemala by way of New Orleans of four containers containing industrial printing machinery purchased by Quality Print. Maersk was the carrier hired to ship the goods. Three containers were shipped and discharged in Guatemala. One container was delayed in arriving in New Orleans, was subject to Hurricane Katrina, was surveyed on November 9, 2005, and apparently held in Jefferson, Louisiana. In October 2005, Quality Print initiated actions in Panama seeking damages of over $8 million. Maersk filed the instant action in this district in April 2006, and Quality Print commenced an additional action in Guatemala in October 2006. Able counsel have

1

woven a complicated tapestry of issues to be resolved, including the effect of the initial booking confirmation and the bills of lading, the limitation of liability provisions, the forum selection clause, and the doctrines of forum non conveniens and international comity.

## Prior Proceedings

On April 10, 2006, Maersk filed its complaint. On August 22, 2006 Maersk filed an amended complaint and on August 31, 2006 an order of attachment was signed in the amount of $650,000.

On April 24, 2007, Maersk filed a Second Amended Complaint ("SAC") seeking: (1) an injunction enforcing the forum selection clause in the contract of carriage, (2) damages arising from the commencement of actions in Panama prohibited by a service contract incorporated in the contract of carriage, (3) damages resulting from abuse of process in the actions in Panama, (4) a declaration that Maersk is not liable for any damage to the printing machinery, (5) enforcement of COGSA limitations of liability, (6) damages for demurrage, storage and other

charges incurred on the containers, (7) attorneys' fees, (8) indemnity from freight forwarders.

The instant motion was heard and marked fully submitted on October 10, 2007.

## The Facts

In 2005, Quality Print, a Guatemalan corporation, purchased a used Heidelberg SpeedMaster 102-SP&L, Series No. 533138 (the "Printing Machinery") from Webster Sygne Corporation ("Webster"), an American company based in Miami, Florida. The Printing Machinery was located in Milwaukee, Wisconsin.

Quality Print arranged for the carriage of the Printing Machinery through a Miami freight forwarder,[1] Caniz International Corp. ("Caniz"), which in turn booked the shipment with Maersk through the freight forwarder Ocean Express Miami ("Ocean Express").

---

[1] A freight forwarding company arranges for, coordinates, and facilitates cargo transport, but does not itself transport cargo.

On or about August 16, 2005, Maersk issued a
booking note (the "Booking Note") to Ocean Express which
states:

"THE TERMS, CONDITIONS, EXEMPTIONS AND EXCEPTIONS
OF THE MAERSK SEALAND BILL OF LADING FOR OCEAN
TRANSPORT OR MULTIMODAL TRANSPORT ARE HEREBY
EXPRESSLY INCORPORATED INTO THIS BOOKING
CONFIRMATION."

Clause 6 of the Maersk Sealand Bill of
Lading, available on the Maersk website, sets forth
the circumstances under which the carrier (Maersk)
will be liable for loss or damage during the carriage
of goods. Section 6.2 states that liability of the
carrier when the stage of the carriage during which
loss or damage occurred is known shall be determined:

6.2(b)   in case of shipments to or from the
United States of America by the provisions of US
COGSA if the loss or damage is known to have
occurred during Carriage by sea to or from the
USA or during Carriage to or from a container
yard or container freight station in or
immediately adjacent to the sea terminal at the
Port of Loading or of Discharge in ports of the
USA . . . .

Clause 26 of the Maersk Sealand Bill of Lading
provides as follows:

26.   Law and Jurisdiction
Whenever clause 6.2(d) and/or whenever US COGSA
applies, whether by virtue of Carriage of the
Goods to or from the United States of America or

4

otherwise, that stage of the Carriage is to be governed by United States law and the United States Federal Court of the Southern District of New York is to have exclusive jurisdiction to hear all disputes in respect thereof. In all other cases, this bill of lading shall be determined by the English High Court of Justice in London to the exclusion of the jurisdiction of the courts of another country.

The Printing Machinery was packed for shipping in four containers provided by Maersk identified by the following numbers: (i) Container No. MSKU 8502736; (ii) Container No. TRIU 8932686-0; (iii) Container No. GSTU 2608422 (collectively the "Guatemala Containers"); and (iv) Container No. MSKU 9065081 (the "New Orleans Container").

The Guatemala Containers were trucked from Milwaukee to Chicago and carried by rail to New Orleans, arriving at the Maersk sea terminal between August 16th and 17th, and loaded on board the M.V. MAERSK FREMANTLE (the "FREMANTLE") for carriage to Guatemala.

Due to limited space on the train from Chicago, the New Orleans Container containing the electronic unit that operates the Printing Machinery did not arrive at the New Orleans rail container terminal until August 23, 2005, and was not delivered to the Maersk sea terminal until

August 25, 2005. The FREMANTLE had a cargo loading cut off date of August 22, 2005.

On or about August 24, 2005, Maersk issued bill of lading no. SJ1711168 (the "Maersk Bill of Lading") reflecting carriage of the Guatemala Containers from Milwaukee to Guatemala City, Guatemala. The Maersk Bill of Lading is a "straight," non-negotiable bill of lading. It identifies Defendant Ocean Express Miami ("Ocean Express") as the shipper and Defendant Carga Global, S.A. ("Carga") as the consignee and notify party.

On August 24, 2005, the FREMANTLE set sail from New Orleans to Guatemala with the three Guatemala Containers aboard, which were discharged in sound condition at Santo Tomas de Castilla, Guatemala, on August 26, 2005. However, because the cargo was not cleared through Customs, the three containers were seized by customs authorities and held for several months. The containers therefore incurred significant demurrage, storage and other charges.

On August 29, 2005, Hurricane Katrina made landfall in New Orleans, resulting in severe flooding and damaging the Maersk sea terminal, which subsequently had to

discontinue operations for several weeks. The New Orleans
Container therefore remained in New Orleans.

On or about September 14, 2005, Caniz issued bill
of lading No. CNZO10753-01 (the "Caniz Bill of Lading")
reflecting carriage of all four (4) containers aboard the
FREMANTLE. The Caniz Bill of Lading identified Webster,
the seller of the printing press, as the shipper, and
Quality Print as consignee. The Caniz Bill of Lading
identifies Caniz Logistica, S.A. as the notify party.

By mutual agreement, the New Orleans Container
was picked up to permit Quality Print's cargo underwriters
to determine the extent of any damage. An initial joint
survey took place on November 9, 2005, at the Cajun
Distribution facility in Jefferson, Louisiana. The survey
did not reveal any obvious damage to the electronic
components of the printing press. The surveyors jointly
recommended that the components be assembled with those in
the three containers in Guatemala, at which time the press
should be run and tested for damage.

On or about October 26, 2005 and October 27,
2005, respectively, Quality Print filed two actions in the

Second Maritime Court of Panama ("Panamanian Court"), (the "Panamanian Actions") for damages incurred for failure to deliver the New Orleans Container to the Port of St. Thomas of Castilla in Guatemala. The first action, an *in rem* action against the FREMANTLE, claimed damages for US $8,415,000 and sought an Order of Arrest against the FREMANTLE. On the same day the *in rem* action was filed, the Panamanian Court issued an Order of Arrest against the FREMANTLE. Counsel for Maersk petitioned the Panamanian Court seeking to suspend the Order of Arrest and offering a US $10,000,000 cash bond as security in lieu of the arrest of the FREMANTLE. Quality Print agreed to accept the cash bond of that amount and agreed to file a joint petition with Maersk seeking the suspension of the Order of Arrest of the FREMANTLE in exchange for the cash bond. On the same day the *in rem* action was filed, October 26, 2005, the Panamanian Court ordered the suspension of the Order of Arrest.

The second Panamanian Action is an *in personam* action against Maersk which also claims damages for US $8,415,000. In conjunction with the *in personam* action, Quality Print petitioned for an Order of Arrest of the M/V MARGRETHE MAERSK (the "MARGRETHE"). Two days following the

filing of the *in personam* action, on October 29, 2005, Quality Print and Maersk filed a joint petition asking the Panamanian Court to accept the same US $10,000,000 bond posted by Maersk in the *in rem* action as security in the *in personam* action in lieu of the arrest of the MARGRETHE. On October 29, 2005, the Panamanian Court ordered the suspension of the arrest of the MARGRETHE.

Maersk has filed motions in the two pending actions in Panama to require Quality Print to proceed in the United States District Court, Southern District of New York on the merits pursuant to the forum selection clause in the governing contract of carriage. Decisions denying these motions are now on appeal and still pending in Panama.

On October 30, 2006, Quality Print commenced an action in Guatemala relating to the same loss and citing the Booking Note. Maersk has moved to dismiss based upon the forum selection clause in the contract of carriage and in view of the prior actions filed in Panama, which motions remain pending.

## I. There Is No Basis To Vacate the Maritime Attachment

## A.    The Rule B Vacatur Standard

"The use of the process of attachment in civil causes of maritime jurisdiction by courts of admiralty . . . has prevailed during a period extending as far back as the authentic history of those tribunals can be traced." Atkins v. The Disintegrating Co., 85 U.S. 272, 303 (1873). "Maritime attachments arose because it is frequently, but not always, more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 443 (2d Cir. 2006).    Thus, the traditional rule of maritime attachments has been to permit attachments wherever the property of the defendant may be found, and not require a plaintiff "to scour the globe" to find a proper forum where defendant possesses sufficient property to satisfy a judgment.    Id.

The present rules for obtaining a maritime attachment are found in the Federal Rules of Civil Procedure Supplemental Rule B, which was promulgated under the Rules Enabling Act, 28 U.S.C. § 2071.    To obtain an attachment, plaintiff must file a verified complaint

10

seeking attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. Fed. R. Civ. P. Supp. R. B(1). Thereafter, Rule E(4)(f) provides that any person claiming an interest in the attached property is "entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4)(f). Plaintiff has the burden to show that the attachment should not be vacated. Acqua Stoli, 460 F.3d at 445. At the hearing the defendant "can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. R. E(4)(f), advisory committee's note.

In a Rule E(4)(f) inquiry challenging a Rule B attachment, a district court must vacate the attachment if plaintiff fails to demonstrate that it has satisfied the requirements of Rules B and E. Aqua Stoli, 460 F.3d at 445. A district court also has discretion to vacate the attachment where defendant shows at the Rule E hearing that (1) the defendant is subject to suit in a convenient adjacent district; (2) the plaintiff could obtain *in*

11

*personam* jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. Id.

## B. The Dispute Falls Within the Court's Admiralty Jurisdiction

Quality Print argues that the attachment should be vacated because Maersk's claims are tort claims, not maritime claims, and as such do not fall within the Court's admiralty jurisdiction. However, the central allegation of the SAC is that by bringing suit against Maersk in Panama and Guatemala and obtaining arrest orders for the FREMANTLE and the MARGRETHE in the Panamanian Actions, Quality Print violated the parties' contract of carriage -- specifically, the terms of the Maersk Bill of Lading.[2] All of Maersk's claims rely on this alleged contract.

The admiralty jurisdiction of the federal courts is grounded in Article III of the Constitution. See U.S. Const. art. III, § 2 (providing that the federal judicial

---

[2] "A bill of lading is a document normally issued by the shipowner when goods are loaded on its ship, and may, depending on the circumstances, serve as a receipt, a document of title, a contract for the carriage of goods, or all of the above." Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 823 (2d Cir. 2006).

12

power shall extend to "all Cases of admiralty and maritime Jurisdiction"); see also 28 U.S.C. § 1333(1) (granting federal district courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction"). "[T]he boundaries of admiralty jurisdiction over contracts -- as opposed to torts or crimes -- being conceptual rather than spatial, have always been difficult to draw." Norfolk S. Ry. v. James N. Kirby, Pty. Ltd., 543 U.S. 14, 23 (2004) ("Kirby") (quoting Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961)). In an action to enforce a contract, the applicability of admiralty jurisdiction is determined by "the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." Id. at 24 (quotation omitted).[3] In Kirby, the Court held that certain intermodal bills of lading providing for carriage of goods from Australia to Huntsville, Alabama, were maritime contracts because their principal objective was maritime commerce. Id. at 25. This was so even though damage to the shipment occurred not during ocean carriage, but during rail carriage from

---

[3] Prior to Kirby, the Second Circuit required a "threshold inquiry" into the subject matter of the dispute. See Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 200 (2d Cir. 1992). The Second Circuit has since expressed uncertainty as to whether this "threshold inquiry" requirement survives Kirby. See Folksamerica Reins. Co. v. Clean Water of New York, Inc., 413 F.3d 307, 313 (2d Cir. 2005). In any event, given the similarity of the instant facts to those of Kirby, this case survives the "threshold inquiry."

13

Savannah, Georgia to Huntsville. Id. at 24-25. Kirby articulated the rule that "[s]o long as a bill of lading requires substantial carriage of goods by sea," it constitutes a "maritime contract" over which the federal courts may appropriately exercise admiralty jurisdiction. Kirby at 27. See also Folksamerica Reins. Co. v. Clean Water of New York, Inc., 413 F.3d 307, 315 (2d Cir. 2005).

As noted, Maersk's claims all rely on the alleged contract of carriage, consisting of the Booking Note and the Maersk Bill of Lading. Both documents contemplated multimodal transportation: overland carriage from Milwaukee, Wisconsin to New Orleans, and ocean voyage from there to Guatemala. Neither portion of this carriage could properly be deemed "insubstantial," and as such, the alleged contract satisfies Kirby's requirement that it involve "substantial carriage of goods by sea."

Kirby also requires an inquiry into whether the case is "inherently local." Id. at 27. The parties have not identified any local interests implicated by the contract at issue in this case "as to beckon interpretation by state law," id., and the Court perceives none. The

14

dispute therefore falls within the admiralty jurisdiction of this Court.

Quality Print has raised no other objections to the attachment. Accordingly, Maersk has met its burden of establishing a proper basis for the attachment.

## II. The Motion To Dismiss

Quality Print argues that the SAC should be dismissed on several grounds. First, Quality Print argues that the Court lacks subject matter jurisdiction over Maersk's claims. Second, Quality Print argues that it is not a party to the Maersk Bill of Lading and therefore cannot be bound by its forum selection clause. Third, Quality Print argues that even if it is a party to the Maersk Bill of Lading, the forum selection clause does not preclude the Panamanian Actions. Fourth, Quality Print argues that the SAC should be dismissed on forum non conveniens grounds. Finally, Quality Print argues that Maersk's claims violate principles of international comity.

## A. Subject Matter Jurisdiction Has Been Established

As discussed above, this Court possesses admiralty jurisdiction over the instant action. See Kirby, 543 U.S. at 27.

## B. **The Motion to Dismiss Standard**

Rule 12(b)(6) governs Quality Print's second and third arguments for dismissal. For the purposes of a Rule 12(b)(6) motion to dismiss for failure to state a claim, all factual allegations are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007)).

However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Rather, it is well understood that "conclusions of law or unwarranted deductions of fact are not admitted" for the purposes of stating a claim. Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 174-75 (2d Cir. 2005), cert. denied, 126 S. Ct. 421 (2005) (citation omitted).

## C. Quality Print Is Bound by the Bill of Lading

Quality Print maintains that claims brought by Quality Print against Maersk in the Guatemalan and Panamanian Actions are not subject to the forum selection clause in the Maersk Bill of Lading because Quality Print is not a party to that contract. In response, Maersk relies on the Supreme Court's recent Kirby decision for the proposition that a freight forwarder acts as agent for the cargo owner and thus has the authority to bind a cargo owner to the contract of carriage. Thus, Maersk argues, Ocean Express bound Quality Print through the Booking Note and the Maersk Sealand Bill of Lading incorporated thereby. Alternatively, Maersk argues that Quality Print was bound by the Maersk Bill of Lading issued to Ocean Express and

Carga on August 24, 2005. Quality Print disputes Maersk's reading of Kirby, arguing that the decision actually precludes a finding that it was bound by the forum selection clause.

The controversy in Kirby arose from two bills of lading for the transportation of goods from Australia to Alabama. Kirby, 543 U.S. at 18. The cargo owner, Kirby, hired ICC, an Australian freight forwarding company, to arrange for delivery by through (i.e. end-to-end) transportation. Id. at 19. ICC issued a bill of lading to Kirby, which contained a "Himalaya Clause," providing that the limitations of liability therein protected any servant, agent or other person whose services were used to perform the contract. Id. at 20. ICC then hired Hamburg Süd, a German ocean shipping company, to transport the containers. Id. To formalize their contract of carriage, Hamburg Süd issued its own bill of lading to ICC. Id. at 21. The Hamburg Süd bill of lading also contained a Himalaya Clause and a limitation of liability that was more protective than ICC's. Id. Hamburg Süd then hired Norfolk to transport the containers by rail from Savannah, Georgia to Huntsville, Alabama. Id. The train derailed en route to Huntsville, and Kirby sued Norfolk for the full amount of

damages, arguing, *inter alia*, that the limitation of
liability clause contained in the bill of lading issued by
Hamburg Süd to ICC was inapplicable because ICC lacked the
authority to bind Kirby. Id. at 21-22.

After establishing that it had admiralty
jurisdiction over the dispute as described above, and
finding that the Himalaya Clauses were valid and
applicable, the Court, relying on Great N. R. Co. v.
O'Connor, 232 U.S. 508 (1914), held that "[w]hen an
intermediary contracts with a carrier to transport goods,
the cargo owner's recovery against the carrier is limited
by the liability limitation to which the intermediary and
carrier agreed." Id. at 33. The Court went on to say:

> The intermediary is certainly not automatically
> empowered to be the cargo owner's agent in every
> sense. That would be unsustainable. But when it
> comes to liability limitations for negligence
> resulting in damage, an intermediary can
> negotiate reliable and enforceable agreements
> with the carriers it engages.

Id. Quality Print relies on this language, and the Court's
statement that the principle it derived from Great Northern
"only requires treating ICC as Kirby's agent for a *single,
limited* purpose: when ICC contracts with subsequent
carriers for limitation on liability," Id. at 34 (emphasis
in original), arguing that Kirby limits the agency of a

19

freight forwarder to its ability to bind the cargo owner to a limitation of liability in a contract of carriage -- and a forum selection clause is not a limitation of liability.

The Kirby decision does refer to concepts of agency, but it does not rely on agency law. See Kirby, at 34 ("We think reliance on agency law is misplaced here."). Rather, it relies on a rule of federal common law derived from the Court's prior Great Northern decision, the purpose of which is to "ensure the reliability of downstream contracts for liability limitations." Kirby, at 34. Although the Court's rationale in Kirby seems to support extension of its rule to a forum selection clause, Kirby must be read in light of its companion case, which both parties overlooked.

Kukje Hwajae Ins. Co., Ltd. v. M/V HYUNDAI LIBERTY, 294 F. 3d 1171 (9th Cir. 2002) ("Kukje I") addressed the very question at issue in this case: "whether the owner of cargo, who contracted with an intermediary non-vessel operating common carrier (NVOCC) to arrange for the carriage of cargo on a ship, was bound by the forum-selection clause in the bill of lading issued by the ship's

owner to the NVOCC . . . ." Id. at 1173.[4] Affirming the district court's dismissal of the cargo owner's claims, the Ninth Circuit held that,

> "because an NVOCC is considered, in general, to act as an agent for the cargo's owner when it contracts for carriage on a vessel, and because in this case [the NVOCC], consistent with that commercial norm, was acting as [the cargo owner's] agent when it accepted the [carrier's] bill of lading, [the cargo owner's insurer] is bound by that bill."

Id. at 1177. The Ninth Circuit did however state specifically that by recognizing that the NVOCC acted as the cargo owner's agent when it accepted the carrier's bill of lading, "we do not mean to suggest that the relationship between [the NVOCC] and [the cargo owner] was one of agent and principal for all purposes." Id. at 1177, n.5.

The Supreme Court granted certiorari and deferred decision pending review of Kirby. On November 15, 2004, the Supreme Court vacated and remanded the case to the Ninth Circuit for further consideration in light of Kirby. See Green Fire & Marine Ins. Co., Ltd. v. M/V HYUNDAI LIBERTY, 543 U.S. 985 (2004).

---

[4] An "NVOCC" is "a common carrier that does not operate the vessels by which the ocean transport is provided; and is a shipper in its relationship with an ocean common carrier." 46 U.S.C.A. 40102(16) (2006). The difference between a freight forwarder and an NVOCC is not relevant to this motion.

On remand, the Ninth Circuit did not revisit the agency issue in light of Kirby, but rather affirmed the district court's dismissal on the independently sufficient grounds that the cargo owner had accepted the carrier's bill of lading by suing on it. See Kukje Hwajae Ins. Co., Ltd. v. M/V HYUNDAI LIBERTY, 408 F.3d 1250, 1254 (9th Cir. 2005) ("Kukje II"). This rule is generally accepted by courts in this and other circuits. See All Pacific Trading, Inc. v. Vessel M/V HANJUN YOSU, 7 F.3d 1427, 1432 (9th Cir. 1993) ("At the very least, Plaintiff's initiation of this suit constituted acceptance of the terms of the Hanjin bills of lading.") cert. denied, 510 U.S. 1194 (1994); Mitsui & Co. (USA), Inc. v. MIRA M/V, 111 F.3d 33, 36 (5th Cir. 1997) ("the district court did not err in determining that, by filing a lawsuit for damages under the bill of lading, [the shipper] has accepted the terms of the bill of lading, including the unnegotiated forum selection clause"); F.D. Import & Export Corp. v. M/V REEFER SUN, 248 F. Supp. 2d 240, 248 (S.D.N.Y. 2002) (holding that terms of bill of lading apply to shipper where it brings suit thereunder); Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp. 2d 118, 125 (S.D.N.Y. 1997) (same) aff'd sub nom Farrell Lines Inc. v. Ceres Terminals Inc., 161

F.3d 115 (2d Cir. 1998); Kanematsu Corp. v. M/V GRETCHEN W,
897 F. Supp. 1314, 1317 (D. Or. 1995) (same).

Similarly, Quality Print has brought multiple
suits against Maersk in Panama and Guatemala, each relying
upon the Booking Note incorporating the terms and
conditions of the standard Maersk Sealand Bill of Lading.
As such, Quality Print has accepted the Maersk Sealand Bill
of Lading and is bound thereby.

This Court also believes that, had the Ninth
Circuit revisited its agency determination in light of
Kirby, it would have found that its initial decision was
not only consistent with, but in fact compelled by Kirby.[5]

The Kirby Court articulated three bases for its
decision, all of which recommend application of its
"limited agency rule" to a forum selection clause. First,
the Court held that its limited agency rule is consistent

---

[5] A "GVR" (grant, vacate and remand) order indicates that the Supreme
Court believes there to be "a reasonable probability that the decision
below rests upon a premise that the lower court would reject if given
the opportunity for further consideration." Lawrence v. Chater, 516
U.S. 163, 167 (1996); see also Youngblood v. West Virginia, 547 U.S.
867, 870-875 (2006) (Scalia, J., dissenting). Particularly in light of
the Supreme Court's recent "great expansion" of GVR practice beyond its
traditional bounds, see Id. at 870-71, this Court does not read the
Supreme Court's GVR of the Ninth Circuit's decision in Kukje I to
reflect a determination that the decision was incorrect.

23

with industry practice. Kirby at 35. In intercontinental ocean shipping, carriers may not know if they are dealing with an intermediary rather than a cargo owner, how many intermediaries there are, or what obligations are outstanding between them. Id. The task of information gathering might be very costly or impossible given the number of times goods change hands in the course of intermodal transport. Id., citing 1 T. Schoenbaum, Admiralty and Maritime Law 589 (3d ed. 2001); Stephen G. Wood, Multimodal Transportation: An American Perspective on Carrier Liability and Bill of Lading Issues, 46 Am. J. Comp. L. 403, 404 (1998).

Second, the Court stated that if liability limitations negotiated with cargo owners were reliable while limitations negotiated with intermediaries were not, carriers would likely want to charge the latter higher rates, but are prevented from doing so by statutory and decisional law promoting nondiscrimination in common carriage. Kirby, at 35.

Finally, the Court argued that its decision produced an equitable result. The cargo owner retained the

right to sue the intermediary for any loss exceeding the limitation of liability it agreed to with the carrier. Id.

The first two rationales apply with equal force to a forum selection clause. The "normal commercial role" of an NVOCC or freight forwarder is agent of the cargo owner when it accepts a bill of lading. See Delphi-Delco Electronics Systems v. M/V NEDLLOYD EUROPA, 324 F. Supp. 2d 403, 419-20 (S.D.N.Y. 2004). The "very costly or even impossible" task of tracking down information about the cargo owner, intermediaries, and the obligations between them does not vary between clauses in the bill of lading. Further, failure to recognize a default rule that a freight forwarder's acceptance of a bill of lading binds the cargo owner to a forum selection clause in the bill of lading would effectively render carriers unable to contract for selection of a forum, an undesirable result in itself, which also implicates the carrier's inability to charge higher rates when contracting with an intermediary.

As to the equities, there is certainly a distinction to be drawn between the two types of clauses, insofar as here, a cargo owner faces the theoretical inconvenience of having to sue the carrier and various

25

intermediaries in diverse fora. However, without the limited agency rule, not only would the carrier be put to the inconvenience of defending itself worldwide, it would be rendered unable to protect itself by contract. The same cannot be said of the cargo owners under the limited agency rule, as they are free to contractually limit intermediaries' authority to agree to contracts with any disagreeable terms -- including forum selection clauses and limitations of liability.

The rule recognizing a freight forwarder's limited agency to bind a cargo owner to a forum selection clause by accepting a carrier's bill of lading also has the advantage of being consistent with decades of decisional and statutory law. See, e.g., Great N. R. Co. v. O'Connor, 232 U.S. 508, 514 (1914) ("the carrier had the right to assume that the transfer company could agree upon the terms of the shipment"); Ins. Co. of N. Am. v. M/V OCEAN LYNX, 901 F.2d 934, 937 n.2 (11th Cir. 1990) (a cargo owner "may treat [an NVOCC] as a common carrier for purposes of COGSA, but underlying carriers . . . treat [the NVOCC] as [the cargo owner's] agent"); Carman Tool & Abrasives, Inc. v. Evergreen Lines, 871 F.2d 897, 901 (9th Cir. 1989) ("Parties who do not deal with the carrier directly have a

responsibility to obtain a copy of the bill of lading if they have an interest in knowing its terms. We decline to place on the carrier the burden of tracking down these remote parties and advising them of the terms of the bill of lading."); Ins. Co. of N. Am. v. S/S Am. Argosy, 732 F.2d 299, 301 (2d Cir. 1984) ("With respect to the vessel and her owner . . . the NVOCC is an agent for the shipper, and thus merely a customer . . . .") (citation omitted); Jockey Int'l, Inc. v. M/V LEVERKUSEN EXPRESS, 217 F. Supp. 2d 447, 457 (S.D.N.Y. 2002) (holding that forum selection clause in a bill of lading issued to an NVOCC binds the cargo owner because the NVOCC acted as the cargo owner's agent in accepting the bill of lading); Glyphics Media, Inc. v. M/V CONTI SINGAPORE, 2003 WL 1484145, at *7 (S.D.N.Y. 2003) (same); Wildwood Imps. v. M/V ZIM SHANGHAI, 2005 WL 425490, at *2 (S.D.N.Y. Feb. 20, 2005) (same); Am. Home Assur. Co. ex rel. Stanley Door Sys. v. M/V HANJIN, 2004 WL 1197240, at *5 (S.D.N.Y. June 1, 2004) (same); see also 46 U.S.C.A. § 40102 (defining a non-vessel-operating common carrier as "a shipper in its relationship with an ocean common carrier" and an ocean freight forwarder as a person that "dispatches shipments from the United States via a common carrier and books or

27

otherwise arranges space for those shipments on behalf of shippers").

## D. The Forum Selection Clause Precludes the Panamanian Actions

Quality Print argues that even if the forum selection clause in the Maersk Bill of Lading does apply, it does not preclude issuance by a court outside this jurisdiction of a maritime attachment. Quality Print argues that the Panamanian Actions therefore do not violate the forum selection clause. Maersk concedes that Quality Print is entitled to obtain a maritime attachment in other courts, but asserts that Quality Print has breached the forum selection clause by refusing to recognize the exclusive jurisdiction of this Court to hear the dispute on the merits. See SAC ¶¶ 38-41.

Upon the proper showing, Maersk may obtain an injunction preventing Quality Print from pursuing its suits in Panama and Guatemala except to the extent that such litigation relates to Quality Print's right to obtain security for its claims. See Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp. 2d 118, 125

28

(S.D.N.Y. 1997) (same) aff'd sub nom Farrell Lines Inc. v. Ceres Terminals Inc., 161 F.3d 115 (2d Cir. 1998).

## E. Quality Print's Forum Non Conveniens Argument Fails

Quality Print argues that, notwithstanding the forum selection clause Maersk Bill of Lading, the SAC should be dismissed on the grounds of forum non conveniens. Maersk responds that Quality Print has not made the necessary showing to overcome the forum selection clause in the Maersk Bill of Lading.

The doctrine of forum non conveniens is a discretionary device permitting a court, in rare instances, to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim." Carey v. Bayerische Hypo- und Vereinsbank AG, 370 F.3d 234, 237 (2d Cir. 2004) (citation omitted). However, the Supreme Court has held that a forum selection clause in a commercial agreement "should control absent a strong showing that it should be set aside." Chasser v. Achille Lauro Lines, 844 F.2d 50, 54 (2d Cir. 1988) (quoting M/S BREMEN v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). See also Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 822 (2d Cir. 2006)

("where one party has shown an apparently governing forum selection clause, the party opposing litigation in the so designated forum must make a strong showing to defeat that contractual commitment").

In admiralty law, federal law governs the enforceability of a forum selection clause. Carnival Cruise Lines Inc. v. Shute, 499 U.S. 585, 589 (1991). A forum selection clause in a commercial contract is presumed to be prima facie valid, M/S BREMEN v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) ("Bremen"), and should be enforced unless the resisting party clearly shows that enforcement of the clause would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching. Id. at 15; see also Vimar Seguros y Reaseguros v. M/V SKY REEFER, 515 U.S. 528 (1995) (applying Bremen rule to an international forum selection clause in a bill of lading).

Quality Print argues that the issues raised by Maersk in the SAC can and should be heard in the context of the Panamanian Actions, and that the SAC should be dismissed pursuant to the first-to-file rule and because this suit will double the expenses, time and effort of both

parties, constituting a waste of resources. Further, Quality Print argues that proceeding on Maersk's claims poses a serious risk of inconsistent rulings, that Maersk is not a New York or U.S. resident, and there is no party with a substantive connection to this district.

Although these factors may be relevant to a forum non conveniens motion where no forum selection clause is implicated, Quality Print has not made the "strong showing" necessary to overcome the prima facie validity of the forum selection clause at issue here. See Bremen, 407 U.S. at 15. If a form selection clause is mandatory or exclusive, as opposed to permissive, it will be presumed enforceable. See John Boutari and Son, Wines and Spirits, S.A. v. Attiki Imps. and Distribs., Inc., 22 F.3d 51, 52-53 (2d Cir. 1994); Cent. Nat'l-Gottesman, Inc. v. M.V. "GERTRUDE OLDENDORF", 204 F. Supp. 2d 675, 678 (S.D.N.Y. 2002). This presumption may be overcome on a showing that the forum selection clause is "unreasonable." Bremen, 407 U.S. at 15. A forum selection clause is "unreasonable" (1) if its incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party will for all practical purposes be deprived of its day in court due to the grave inconvenience or unfairness of the selected

31

forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clause contravenes a strong public policy of the forum state. Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993).

## The Forum Selection Clause Is Mandatory and Exclusive

The Maersk Booking Note for the four containers, which Quality Print has relied upon in the Guatemala and Panamanian Actions, incorporates by reference the Maersk Sealand Bill of Lading, which is available on Maersk's website. Upon issuance of an initial receipt or booking document incorporating a bill of lading, the terms of the latter become part of the parties' contract. See Berkshire Knitting Mills v. Moore-McCormack Lines, Inc., 265 F. Supp. 846, 848 (S.D.N.Y. 1965); St. Paul & Marine Ins. Co. v. Hanjin Shipping Co., Ltd., 2001 WL 196754, at *2 (S.D.N.Y. Feb. 21, 2001). Even were this not so, the Maersk Bill of Lading issued as to the Guatemala Containers would govern any dispute as to those containers and the New Orleans Container as well, because it is Maersk's standard form bill of lading and would have issued in the normal course

of business.[6]   See Garnay, Inc. v. M/V LINDO MAERSK, 816 F.
Supp. 888, 893-94 (S.D.N.Y. 1993) (holding that bill of
lading issued as to two containers was binding as to third
container, which was stolen, and as to which no bill of
lading issued, provided that the bill of lading in evidence
was the standard form bill of lading that carrier always
used); see also Luckenbach S.S. Co. v. Am. Mills Co., 24
F.2d 704 (5th Cir. 1928).


Clause 26 of the Maersk Sealand Bill of Lading
provides that "whenever US COGSA applies, whether by virtue
of Carriage of the Goods to or from the United States of
America or otherwise, that stage of the Carriage is to be
governed by United States law and the United States Federal
Court of the Southern District of New York is to have
exclusive jurisdiction to hear all disputes in respect
thereof."   There can be no dispute that language of this
clause, i.e. "is to have exclusive jurisdiction to hear all
disputes," is exclusive, though it is conditional on the
applicability of "US COGSA".

---

[6] It appears that the terms of the Maersk Bill of Lading, which issued on
the Guatemalan Containers, and the Maersk Sealand Bill of Lading, which
the Maersk Booking Note incorporated by reference, are identical in all
material respects.   This is implicit in the parties' submissions, and
the Court proceeds on that assumption.   The Maersk Bill of Lading
attached to the SAC is, for the most part, illegible.

33

Quality Print has not disputed that "US COGSA," i.e. the Carriage of Goods by Sea Act, Pub. L. 16 No. 74-521, 49 Stat. 1207 (1936) (codified at 46 U.S.C. §§ 30701 et seq.) ("COGSA") applies to this dispute. COGSA applies of its own force "[e]xcept as otherwise provided . . . to a carrier engaged in the carriage of goods to or from any port in the United States." 46 U.S.C.A. § 30702. As COGSA permits, Maersk's bill of lading extends its applicability to the period of inland transportation. Cf. Kirby, 543 U.S. at 29. Clause 6 of the Maersk Sealand Bill of Lading, which sets forth the circumstances under which the carrier will be liable for loss or damage during the carriage states, inter alia, that liability of the carrier when the stage of the carriage during which loss or damage occurred is known shall be determined "in case of shipments to or from the United States of America by the provisions of US COGSA if the loss or damage is known to have occurred during Carriage by sea to or from the USA or during Carriage to or from a container yard or container freight station in or immediately adjacent to the sea terminal at the Port of Loading . . . ." Thus, COGSA and the exclusive forum selection clause apply to this dispute.

**Quality Print Has Not Shown That the Forum Selection Clause Is Unreasonable**

34

Quality Print has not argued that the inclusion of the forum selection clause in the contract was the product of fraud or coercion. Cf. A.I. Credit Corp. v. Liebman, 791 F. Supp. 427, 430 (S.D.N.Y. 1992).

Quality Print has not demonstrated that failure to dismiss this case for forum non conveniens will deprive it of a meaningful hearing. Quality Print has initiated three other suits on this matter, in both Guatemala and Panama. Panama has no direct relation to the shipment or the parties but merely sits strategically as a choke point for vessels crossing from the Caribbean to the Pacific Ocean. Guatemala, however, would clearly be a more convenient forum for Quality Print, a Guatemalan company, and was the destination of the shipment. However, these facts are insufficient to meet the "heavy burden of proof" required to set aside a forum-selection clause on the ground of inconvenience. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594-95 (1991); Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995).

Finally, Quality Print has not put forward any
argument to suggest that the chosen law would deprive it of
a remedy, or that the clause contravenes a strong public
policy of the forum state. As such, Quality Print's
argument to dismiss the SAC under the doctrine of forum non
conveniens fails.

## D.  **Quality Print's Comity and Res Judicata Arguments Fail**

Quality Print has also argued that the SAC should
be dismissed on the grounds of international comity based
on the assertion that the Second Maritime Court of Panama
determined that it had jurisdiction over Maersk and issued
an Order of Arrest against the FREMANTLE. These
assertions, even if true, are insufficient to demonstrate a
risk of "competing adjudicatory power." See Dow Jones &
Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 415
(S.D.N.Y. 2002).

Quality Print also asserts that the claims in the
SAC and the claims pending in Panama arise from the same
set of facts and stem from the same dispute, and will
require much of the same evidence and many of the same
witnesses. To the extent this is true (which remains to be

shown) it does not require dismissal of this action, but rather suggests that injunction of Quality Print's maintenance of the Panamanian Actions may be appropriate in light of the forum selection clause in the parties' contract of carriage. See Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp. 2d 118 (S.D.N.Y. 1997) (enjoining shipper's insurers from maintaining pending lawsuit against carrier in Italy where forum selection clause required any suit to be brought in Southern District of New York); see also Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 931 n.71 (D.C. Cir. 1984) ("In the context of antisuit injunctions, deference to the foreign proceeding may be denied because of the litigant's unconscionable evasion of the domestic laws, and not necessarily because of the inherent obnoxiousness of the forum laws to which the litigant has resorted.").

In its reply brief, Quality Print also argues that the Panamanian Court determined that the forum selection clause in Maersk's Bill of Lading is not enforceable against Quality Print, and that such determination bars Maersk's claim for a declaratory judgment under the doctrine of res judicata. Because the argument is raised for the first time in the reply, this

Court need not consider it. See In re Dobbs, 227 Fed. App. 63, 64 (2d Cir. 2007) ("we think that it was entirely proper for the District Court to decline to consider debtor-appellant's argument, raised for the first time in its reply brief . . . ."); F.T.C. v. Med. Billers Network, Inc., ___ F. Supp. 2d ___, 2008 WL 857663 at *20 (S.D.N.Y. March 31, 2008) (declining to consider argument raised for the first time in reply brief because respondent had no opportunity to address it). Nevertheless, the Court does note that the United States' recognition of a foreign decision "is permissive, unlike the mandatory doctrines of res judicata, collateral estoppel and full faith and credit, and rests on notions of comity, international due process and adequate subject matter and personal jurisdiction." South Ionian Shipping Co., Ltd. v. Hugo Neu & Sons Int'l Sales Corp., 545 F. Supp. 323, 325 (S.D.N.Y. 1982). In light of the above, the forum selection clause in the contract of carriage compels that this Court not defer to the Panamanian Courts' determinations in this matter to the extent they go beyond Quality Print's right to obtain security for its claims.

**Conclusion**

For the reasons set forth above, the motion of Quality Print to dismiss the SAC for lack of jurisdiction and to vacate the attachment is denied.

It is so ordered.

**New York, N.Y.**
**April** $75$ **, 2008**

**ROBERT W. SWEET**
**U.S.D.J.**