UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

A.P. MOLLER-MAERSK A/S
d/b/a MAERSK SEALAND,

                Plaintiff,            06 Civ. 2778

    -against-                     OPINION

OCEAN EXPRESS MIAMI; CARGA GLOBAL,
SOCIEDAD ANONIMA; CANIZ INTERNA-
TIONAL CORPORATION; CANIZ LOGISTICA,
SOCIEDAD ANONIMA; and COMERCIALIZADORA
DE CALIDAD, SOCIEDAD ANONIMA
(A.K.A. QUALITY PRINT),

                Defendants.

------------------------------------X



A P P E A R A N C E S:

   Attorneys for Plaintiff

       FREEHILL, HOGAN & MAHAR, LLP
       80 Pine Street
       New York, NY  10005
       By:  Eric E. Lench, Esq.
           William J. Pallas, Esq.

**Sweet, D.J.**

A.P. MOLLER MAERSK A/S ("Plaintiff" or "Maersk") has moved for an order (1) for partial summary judgment enforcing the COGSA $500 package limitation defense; and (2) enjoining Comercializadora de Calidad, Sociedad Anonima ("Defendant" or "Quality Print") from proceeding with litigation on the merits relating to the shipment at issue in this case in any forum other than the United States District Court for the Southern District of New York, in accordance with the forum selection clause incorporated in the contract of carriage. For the reasons stated below, Maersk's motion will be granted.

## I. PRIOR PROCEEDINGS

On April 10, 2006, Maersk filed its complaint. On August 22, 2006, Maersk filed an amended complaint and on August 31, 2006, an order of attachment was signed in the amount of $650,000. On April 24, 2007, Maersk filed a Second Amended Complaint ("SAC").

On August 9, 2007, Quality Print moved to vacate the attachment obtained by Maersk and to dismiss the SAC for lack of

1

subject matter jurisdiction and failure to state a claim.   That
motion was denied on April 25, 2008.

The instant motion was filed May 29, 2008.   On June 9,
2008, counsel for Quality Print moved to withdraw due to Quality
Print's failure to pay outstanding attorneys' fees.   That motion
was granted by this Court's Order of June 13, 2008, and Quality
Print was granted twenty days from the date of the Order to
engage new counsel and file papers in opposition to the instant
motion.   The twenty days has expired, and there is no record of
Quality Print having engaged counsel or filing opposition
papers.

## II.   **FACTUAL BACKGROUND**

In 2005, Quality Print, a Guatemalan corporation,
purchased a used Heidelberg SpeedMaster 102-SP & L Series No.
533138 (the "Printing Machinery") from Webster Synge Corporation
("Webster"), an American company based in Miami, Florida.   The
Printing Machinery was located in Milwaukee, Wisconsin.

Quality Print arranged for the carriage of the
Printing Machinery through Caniz International Corp. ("Caniz"),

2

which in turn booked the shipment with Maersk through the
freight forwarder Ocean Express Miami ("Ocean Express").

The Printing Machinery was packed for shipping in four
containers provided by Maersk identified by the following
numbers: (i) Container No. MSKU 8502736; (ii) Container No. TRIU
8932686-0; (iii) Container No. GSTU 2608422 (collectively, the
"Guatemala Containers"); and (iv) Container No. MSKU 9065081
(the "New Orleans Container").

The Guatemala Containers were trucked from Milwaukee
to Chicago and carried by rail to New Orleans, arriving at the
Maersk sea terminal between August 16th and 17th, and loaded on
board the M.V. MAERSK FREMANTLE (the "FREMANTLE") for carriage
to Guatemala.  The New Orleans Container containing the
electronic unit that operates the Printing Machinery did not
arrive at the New Orleans rail container terminal until August
23, 2005, and was not delivered to the Maersk sea terminal until
August 25, 2005.  The FREMANTLE had a cargo loading cut-off date
of August 22, 2005.

On August 24, 2005, the FREMANTLE set sail from New
Orleans to Guatemala with three Guatemala Containers aboard,

3

which were discharged in sound condition at Santo Tomas de Castilla, Guatemala, on August 26, 2005.

On August 29, 2005, Hurricane Katrina made landfall in New Orleans, resulting in severe flooding and damaging the Maersk sea terminal, which subsequently had to discontinue operations for several weeks.  The New Orleans Container therefore remained in New Orleans.

By mutual agreement, the New Orleans Container was picked up to permit Quality Print's cargo underwriters to determine the extent of any damage.  An initial joint survey took place on November 9, 2005, at the Cajun Distribution facility in Jefferson, Louisiana.  The survey did not reveal any obvious damage to the electronic components of the Printing Machinery.  The surveyors jointly recommended that the components be assembled with those in the three containers in Guatemala, at which time the press should be run and tested for damage.

On or about October 26, 2005 and October 27, 2005, respectively, Quality Print filed two actions in the Second Maritime Court of Panama (the "Panamanian Actions") for damages incurred for failure to deliver the New Orleans Container to the

4

Port of St. Thomas of Castilla in Guatemala. On October 30,
2006, Quality Print commenced an action in Guatemala relating to
the same loss and citing the Booking Note.

The facts of this dispute were laid out in greater
detail in A.P. Moller-Maersk A/S v. Ocean Express Miami, 550 F.
Supp. 2d 454 (S.D.N.Y. 2008) (the "April 25 Opinion").
Familiarity with that Opinion is assumed.

**III. THE MOTION FOR PARTIAL SUMMARY JUDGMENT IS GRANTED**

### A.     Applicable Standard

Summary judgment is granted only if there is no
genuine issue of material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(c); see
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS
Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004).
The courts do not try issues of fact on a motion for summary
judgment, but rather determine "whether the evidence presents a
sufficient disagreement to require submission to a jury or
whether it is so one-sided that one party must prevail as a
matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Resid. Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quotation omitted).

6

If an opposition party fails to respond to a motion

for summary judgment, "summary judgment should, if appropriate,

be entered against the party." Fed. R. Civ. P. 56(e)(2). See

also Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373

F.3d 241, 244 (2d Cir. 2004). However,

> even where a non-moving party fails to respond to a
> motion for summary judgment, a court may not grant the
> motion without first examining the moving party's
> submission to determine if it has met its burden of
> demonstrating that no material issue of fact remains
> for trial. If the evidence submitted in support of
> the summary judgment motion does not meet the movant's
> burden of production, then summary judgment must be
> denied even though no opposing evidentiary matter is
> presented.

D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 109-110 (2d

Cir. 2006) (internal quotations and citations omitted). Thus,

even unopposed motions for summary judgment must "fail where the

undisputed facts fail to show that the moving party is entitled

to summary judgment as a matter of law." Vermont Teddy Bear

Co., 373 F.3d at 244.

## B. Maersk Is Entitled to Partial Summary Judgment

Maersk has moved for partial summary judgment limiting

Quality Print's damages, if any, to $2,500 pursuant to the $500

7

package limitation under the United States Carriage of Goods by
Sea Act, 46 U.S.C. § 30701 note ("COGSA").

Clause 6 of the Maersk Sealand Bill of Lading (the
"Bill of Lading") sets forth the circumstances under which
Maersk will be liable for loss or damage during the carriage of
goods. The Court has already determined that Quality Print is
bound by the Bill of Lading. See April 25 Opinion, 550 F. Supp.
2d at 462-63; see also Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14,
33 (2004) (holding that cargo owner's recovery against carrier
is limited by liability limitation to which an intermediary and
the carrier agree). Section 6.2 states that liability of the
carrier when the stage of the carriage during which loss or
damage occurred is known shall be determined:

> 6.2(b) in case of shipments to or from the
> United States of America by the provisions
> of U.S. COGSA if the loss or damage is known
> to have occurred during Carriage by sea to
> or from the USA or during Carriage to or
> from a container yard or container freight
> station in or immediately adjacent to the
> sea terminal at the Port of Loading or of
> Discharge in ports of the USA . . . .

See April 25 Opinion, 550 F. Supp. 2d at 458. Maersk has
established that the alleged damage to the goods in the New
Orleans Container took place under such circumstances. As such,
pursuant to section 6.2 of the Bill of Lading, COGSA is
applicable. Id. at 468.

Section 4(5) of COGSA provides that

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

46 U.S.C.A. § 30701 note.

The purpose of the COGSA "package limitation" is to present the shipper "with a choice to accept the liability limitation in exchange for a lower rate for shipping, or to declare a higher value and pay a higher rate." Starrag v. Maersk, Inc., 486 F.3d 607, 612 (9th Cir. 2007). Accordingly, "[o]nly by granting shippers a fair opportunity to choose between paying a greater or lesser charge to obtain correspondingly more or less protection for its goods may a carrier limit its liability to an amount less than the loss actually sustained." Gen. Elec. Co. v. MV Nedlloyd, 817 F.2d 1022, 1028 (2d Cir. 1987). Thus, the COGSA package limitation is inapplicable where the shipper "was never afforded a fair

9

opportunity to comply with s 4(5) of COGSA by declaring the
actual value of the goods and inserting it in the bill of
lading." Gen. Elec. Co. v. M.V. Lady Sophie, 458 F. Supp. 620,
622 (S.D.N.Y. 1978); see also Royal Ins. Co. v. M.V. ACX RUBY,
97 Civ. 3710 (MBM), 1998 WL 524899, at *5 (S.D.N.Y. Aug. 21,
1998) ("Although courts have sometimes inquired into a shipper's
degree of sophistication in determining whether it had fair
opportunity to declare excess value, they have done so only
after the carrier has made a prima facie showing that it had
provided notice of the $500 per package limitation and how to
avoid it."). The Court of Appeals has held that a bill of
lading provides sufficient notice where it incorporates by
reference the COGSA limited liability provision and "a space on
the front of the bill of lading provid[es] an opportunity for
the declaration of excess value . . . ." Binladen BSB
Landscaping v. M.V. Nedlloyd Rotterdam, 759 F.2d 1006, 1017 n.12
(2d Cir. 1985); see also Nippon Fire & Marine Ins. Co. v. M.V.
Tourcoing, 167 F.3d 99, 101 (2d Cir. 1999) (language
incorporating COGSA's provisions and space for declaring excess
value of cargo were sufficient notice of limitation of liability
provision and means of avoiding it); Gen. Elec. Co. v. MV
Nedlloyd, 817 F.2d at 1029 (same). District court cases have
not interpreted these requirements formalistically, but rather
require a showing that, in some manner, the bill of lading

provided notice of the liability limitation and the opportunity

to avoid it.  See St. Paul Fire and Marine Ins. v. Thypin Steel

Co., 95 Civ. 4439 (MBM), 1999 WL 639718, at *7 (S.D.N.Y. Aug.

23, 1999) (noting that "the courts in this Circuit have found

the fair opportunity notice requirement satisfied by a variety

of bill of lading provisions in an array of combinations," and

listing cases); Union Carbide Corp. v. M/V Michele, 764 F. Supp.

783, 786 (S.D.N.Y. 1990) ("We find no indication in [Gen. Elec.

Co. v. M/V Nedlloyd] that the presence of a space on the front

of the bill of lading was the crucial factor in that court's

decision.  It is more important that the plaintiff knew that

COGSA governed the transaction and that the defendant's bill of

lading specifically discussed the declaration of excess value .

. . .").

     Here, the Maersk Bill of Lading clause 7.2 states, in

relevant part:

> Save as provided in clause 7.3: . . .
> (b)  Where Carriage includes Carriage to,
> from or through a port in the United States
> of America and US COGSA applies by virtue of
> clauses 5.1 or 6.2(b) neither the Carrier
> nor the Vessel shall in any event be or
> become liable in an amount exceeding US$500
> per Package or customary freight unit.

Clause 7.3 states:

> The Merchant agrees and acknowledges that
> the Carrier has no knowledge of the value of

11

> the Goods and higher compensation than that
> provided for in this bill of lading may be
> claimed only when, with the consent of the
> Carrier, the value of the Goods declared by
> the Shipper upon delivery to the Carrier has
> been stated in the box marked "Declared
> Value" on the reverse of this bill of lading
> and extra freight paid.  In that case, the
> amount of the declared value shall be
> substituted for the limits laid down in this
> bill of lading.  Any partial loss or damage
> shall be adjusted pro rata on the basis of
> such declared value.

These clauses provide sufficient notice of the COGSA limited

liability provision and the opportunity to avoid it.  This is so

notwithstanding the fact that there is no evidence that the Bill

of Lading, incorporated by reference in the booking confirmation

and available on the internet, was actually sent to Defendants.

See Delphi-Delco Elec. Sys. v. M/V NEDLLOYD EUROPA, 324 F. Supp.

2d 403, 425-26 (S.D.N.Y. 2004) (holding that fair opportunity

doctrine is satisfied where "the contract of carriage

incorporates the terms of a standard form bill of lading that is

on file with the Federal Maritime Commission and available both

on the internet and at the offices of the carrier and its

agents").

     The Court must next determine whether Maersk has

demonstrated that there were five (or fewer) packages.  The term

"package" as used in COGSA was left undefined by Congress, which

has created significant difficulties for the courts,

particularly in light of the development of new methods for
preparing and assembling goods for shipment. See Allied Int'l
Am. Eagle Trading Corp. v. S.S. "Yang Ming," 672 F.2d 1055, 1064
(2d Cir. 1982). First resort in interpreting the term must be
to the parties' contract, as set forth in the bill of lading.
Binladen, 759 F.2d at 1012. Here, clause 1 of the Bill of
Lading defines "package" as "where a Container is loaded with
more than one package or unit, the packages or other shipping
units enumerated on the reverse hereof as packed in such
Container and entered in the box on the reverse hereof entitled
'Carrier's 'Receipt' [sic] are each deemed a Package." Because
the Bill of Lading was an online document incorporated by
reference in the booking confirmation, there are no "shipping
units enumerated on the reverse." The definition, though not a
model of clarity, seems to indicate that in the absence of such
enumeration, each individual unit within a container should be
considered a separate "package." The New Orleans Container
contained five separate palletized units, or "skids," each
containing components of the printing press. See Cairns Decl.
at ¶ 2. Other than treating the entire container as a
"package," there is no sensible alternative construction of the
term in the present context. Maersk does not argue that the
container was the package, and in any event, ambiguity in a bill
of lading, which is a contract of adhesion, must be construed

13

against the issuing carrier. See Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F.2d 476, 486 (2d Cir. 1985). The pallets will therefore be treated as separate "packages" under COGSA.

Maersk is therefore entitled to summary judgment on its Fifth Cause of Action. Maersk's liability for damages related to the New Orleans Container is limited under COGSA § 4(5) to $2,500.

## IV. THE INJUNCTION IS GRANTED

Maersk has also sought an order enjoining Quality Print from continuing its pending actions in Panama and Guatemala as they relate to the merits of this dispute and from filing any further actions in those or any jurisdiction beyond this Court.

### A. Applicable Standard

"The power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established." China Trade and Dev. Corp. v. M.V. CHOONG YONG, 837 F.2d 33, 35 (2d Cir. 1987); see also Farrell Lines Inc. v. Ceres Terminals

14

Inc., 161 F.3d 115, 117 (2d Cir. 1998) (recognizing authority of admiralty courts to issue injunctions, including, in the appropriate cases, anti-suit injunctions). However, "because such an order effectively restricts the jurisdiction of the court of a foreign sovereign, an anti-foreign suit injunction should be 'used sparingly,' and should be granted 'only with care and great restraint.'" China Trade, 837 F.2d at 35-36 (quoting U.S. v. Davis, 767 F.2d 1025, 1038 (2d Cir. 1985) and Canadian Filters (Harwich) v. Lear-Spiegler, 412 F.2d 577, 578 (1st Cir. 1969)).

To determine whether to enjoin foreign litigation, the courts of this Circuit have adopted a two-step analysis. As a threshold matter, (A) the parties must be the same in both matters, and (B) resolution of the case before the enjoining court must be dispositive of the action to be enjoined. Paramedicas Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645 (2d Cir. 2004); China Trade, 837 F.2d at 35.

> When these threshold requirements are met, five factors are suggested in determining whether the foreign action should be enjoined: (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable

> considerations; or (5) adjudication of the
> same issue in separate actions would result
> in delay, inconvenience, expense,
> inconsistency, or a race to judgment.

Am. Home Assur. Co. v. Ins. Corp. of Ireland Ltd., 603 F. Supp.

636, 643 (S.D.N.Y. 1984); see also China Trade, 837 F.2d at 35.

The Second Circuit has cautioned that, in due regard for the

interests of comity, the first and third factors, i.e. "whether

the foreign action threatens the jurisdiction of the enjoining

forum" and "whether strong public policies of the enjoining

forum are threatened by the foreign action" take on "much

greater significance." China Trade, 837 F.2d at 36.

## B. **Maersk Is Entitled to an Anti-Suit Injunction**

Here, the threshold requirements are met. The two

Panamanian Actions and the Guatemalan Action both involve the

same parties, and the resolution of this action will be

dispositive of all three. See Decl. of Carlos Fernando

Fernandez Garcia ¶¶ 2-10 (Aug. 7, 2007); Decl. of Jose Estuardo

Luna ¶¶ 2-5 (Aug. 21, 2007).

Maersk has also satisfied the 5-factor test for an

anti-foreign suit injunction. First, the foreign actions

threaten an important public policy of the forum and the

16

jurisdiction of this Court. It has already been determined that Quality Print is bound by the forum selection clause in the Bill of Lading. See April 25 Opinion, 550 F. Supp. 2d at 462-66. That clause provides for exclusive jurisdiction in this Court over any disputes arising under the Maersk Bill of Lading where US COGSA applies. "New York has a well-established public policy of enforcing forum selection agreements." Int'l Fashion Prods. V. Calvin Klein, Inc., 95 Civ. 982 (JFK), 1995 WL 92321, at *2 (S.D.N.Y. March 7, 1995) (issuing preliminary injunction enjoining plaintiff from prosecuting a subsequently filed injunction application in the District Court of Amsterdam, the Netherlands, in light of contract's designation of New York as forum for all disputes); see also Farrell Lines, 161 F.3d 115 (affirming issuance of injunction enjoining plaintiff from further pursuing pending litigation in Italy in light of New York forum selection clause). See generally M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) (holding that forum selection clause was valid and should be enforced by the courts absent some compelling reason making enforcement unreasonable). "Indeed, the justification for an anti-suit injunction 'crests' when a party seeks the aid of a foreign proceeding 'in a blatant attempt to evade the rightful authority of the forum court.'" Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006) (quoting Quaak v.

Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361 F.3d 11,
20 (1st Cir. 2004)). See also Software AG, Inc. v. Consist
Software Solutions, Inc., 08 Civ. 389 (CM) (FM), 2008 WL 563449,
at *24 (S.D.N.Y. Feb. 21, 2008).

Maersk has also made a compelling showing that the
secondary factors weigh in its favor. Specifically, Maersk has
demonstrated that the three foreign actions filed by Quality
Print have great potential to be vexatious and pose significant
risk of delay, inconvenience, expense, inconsistency, and a race
to judgment.

The similarity between the facts of the instant case
and those of Farrell Lines is worthy of note. In Farrell Lines,
plaintiff issued a bill of lading reflecting shipment of a
printing press, which was to be transported by ship from
Livorno, Italy, and discharged at Norfolk, Virginia, with a
final destination of Columbus, Ohio. 32 F. Supp. at 122. In
Norfolk, the vessel's stevedore off-loaded the printing press
and lashed it to a chassis. The driver of the chassis made a
sharp turn from the pier apron onto the main roadway in the
container yard causing the cargo to tip over and hit the ground.
Id. at 123. The press was insured by a group of four insurance
companies. After an exchange of correspondence, plaintiff

18

brought suit against the insurers, shipper and the stevedore, seeking declaratory and injunctive relief. The insurers then brought suit in Livorno, Italy, seeking recovery of damage to the press. Id. Plaintiff moved for partial summary judgment declaring its liability for any damage to the cargo limited to $500 pursuant to COGSA, and seeking an injunction prohibiting defendants from proceeding with litigation in any other forum, including Italy. Id.

After holding that the COGSA liability limitation did apply and that the forum selection in the bill of lading was binding on the shipper and its insurers, see id. at 125-27, the Honorable Michael B. Mukasey issued the injunction. Judge Mukasey held that it had been shown that defendants sought to frustrate two important public policies of this forum through the Italian action: first, defendants filed suit in Italy to avoid the United States policy favoring enforcement of forum selection clauses, and second, defendants filed suit in Italy to avoid the effect of COGSA's liability limitation provisions. Id. at 130. Judge Mukasey's conclusions were based on a defense attorney's certification that admitted these to be the reasons for bringing suit in Italy. See id. Judge Mukasey also noted that, although enjoining the parties from proceeding in Italy was justified under this strict standard, a more lenient

19

standard should be applied because he had decided the merits of plaintiff's declaratory judgment claim, and the standard for enjoining foreign litigation after the domestic court reaches judgment is lower. Id. at 131. See also Paramedicas Electromedicina, 369 F.3d at 655 ("[W]here one court has already reached a judgment - on the same issues, involving the same parties - considerations of comity have diminished force."). The Court of Appeals affirmed "[f]or substantially the same reasons as those stated by the district court in its thoughtful and well-reasoned Opinion and Order . . . ." Farrell Lines, 161 F.3d at 116.

There are distinctions between Farrell Lines and the instant case. Here, the Panama Actions were filed before the instant action, and there are no express admissions on record that Quality Print brought the Panama and Guatemala Actions in order to defeat public policies of this forum. However, these inconsistencies do not change the ultimate determination that an injunction is necessary to protect the Court's jurisdiction and the public interest in enforcing the forum selection clause. Panama has no significant relationship to this dispute. The shipment did not originate or end there, neither Quality Print nor Maersk reside there, and the alleged damage to the shipment did not occur in Panama. It is simply a choke point through

which vessels carrying goods from the United States Gulf to the West Coast of Central and South America must pass.  With regard to the explicit admissions in Farrell Lines, such admissions are not necessary to demonstrate that Quality Print, by bringing multiple suits outside this District in violation of the forum selection clause, seeks to defy the New York's interest in enforcing the forum selection clause and this Court's jurisdiction.

Accordingly, Quality Print, its agents and underwriters will be enjoined from proceeding with litigation on the merits relating to the shipment at issue in this case in any forum other than the United States District Court for the Southern District of New York, in accordance with the forum selection clause incorporated in the contract of carriage.

## V.   CONCLUSION

For the reasons stated above, Plaintiff's motion for partial summary judgment is granted and Quality Print is enjoined from maintaining suit against Plaintiff related to damage to the shipment at issue in this case in any forum other

than the United States District Court for the Southern District
of New York.

It is so ordered.

New York, N.Y.
December $\mathcal{4}$ , 2008

ROBERT W. SWEET
U.S.D.J.