UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

A.P. MOLLER-MAERSK A/S
d/b/a MAERSK SEALAND,

                   Plaintiff,             06 Civ. 2778

     -against-                        OPINION

OCEAN EXPRESS MIAMI; CARGA GLOBAL,
SOCIEDAD ANONIMA; CANIZ INTERNA-
TIONAL CORPORATION; CANIZ LOGISTICA,
SOCIEDAD ANONIMA; and COMERCIALIZADORA
DE CALIDAD, SOCIEDAD ANONIMA
(A.K.A. QUALITY PRINT),

               Defendants.

-------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/18/09

A P P E A R A N C E S:

    Attorneys for Plaintiff

        FREEHILL, HOGAN & MAHAR, LLP
        80 Pine Street
        New York, NY 10005
        By:  Eric Einar Lenck, Esq.
            Willaim Joseph Pallas, III, Esq.

    Attorneys for Defendant, Ocean Express Miami

        DOUGHERTY, RYAN, GIUFFRA, ZAMBITO & HESSION
        131 East 38th Street
        New York, NY 10016
        By:  Peter J. Zambito, Esq.

**Sweet, D.J.**

Plaintiff A.P. MOLLER MAERSK A/S d/b/a MAERSK
SEALAND ("Plaintiff" or "Maersk") has moved for summary
judgment under Rule 56, Fed. R. Civ. P., and for sanctions
against defendant Comercializadora de Calidad Sociedad
Anonima ("Defendant" or "Quality Print"). No opposition
having been filed, the motion for sanctions is granted, and
the motion for summary judgment is granted in part.

## I.   PRIOR PROCEEDINGS AND FACTS

The facts as described below have been set forth
in Maersk's Rule 56.1 Statement ("Statement"),[1] the
affidavits referenced therein, and Maersk's June 30, 2008
Notice to Admit.[2]

---

[1] Because the Statement is unopposed, the facts as set forth therein are
adopted as true for purposes of this motion.

[2] Exhibit C to the Affirmation of William J. Pallas in Support of
Motions for Summary Judgment and Sanctions ("Pallas Aff."). The Notice
is deemed admitted in default of a response. See Fed. R. Civ. P.
36(a)(3); Herrera v. Scully, 143 F.R.D. 545, 550 (S.D.N.Y. 1992)
("Properly stated requests under Fed. R. Civ. P. 36(a) are to be deemed
admitted in the absence of a formal response by the opposing party."
(quoting DeLeon v. Ramirez, 465 F. Supp. 698, 701 (S.D.N.Y. 1977))).
See also S.E.C. v. Kaye, Real & Co., 122 F. Supp. 639, 640 (S.D.N.Y.
1954) (deeming factual statements in an unanswered Request for
Admission of Facts admitted in light of defendants' failure to
respond); Moosman v. Blitz, 358 F.2d 686, 688 (2d Cir. 1966) ("[A]
failure to respond to a request to admit will permit the District Court
to enter summary judgment if the facts as admitted are dispositive.").

1

The facts relating to the present dispute are summarized here. More detailed descriptions of the circumstances giving rise to this litigation are set forth in the Court's opinions dated April 25, 2008 and December 5, 2008. See A.P. Moller-Maersk A/S v. Ocean Express Miami, 550 F. Supp. 2d 454 (S.D.N.Y. 2008) ("April 25 Opinion"); A.P. Moller-Maersk A/S v. Ocean Express Miami, 590 F. Supp. 2d 526 (S.D.N.Y. 2008) ("December 5 Opinion").

Quality Print was the purchaser, owner, and receiver of a shipment of used printing machinery in four ocean containers being transported from Milwaukee, Wisconsin, to Guatemala City, Guatemala, with ocean carriage from New Orleans to Guatemala. Maersk was the carrier of the shipment based upon a booking agreement dated August 16, 2005. Quality Print had arranged for the carriage with Maersk through freight forwarder Caniz International Corp., who in turn booked the shipment with Maersk through the freight forwarder Ocean Express Miami.

After trucking from Milwaukee to Chicago, the first three containers were carried by rail to New Orleans, transported to the Maersk sea terminal and loaded on board the MAERSK FREMANTLE for carriage to Guatemala. Due to

2

rail congestion at Chicago, which may have been compounded by some delay on the part of the shipper with respect to stuffing and delivery, the fourth container, the "New Orleans Container," did not arrive at New Orleans in time to make the sailing cut-off deadline for the MAERSK FREMANTLE.

On August 29, 2005, Hurricane Katrina, one of the worst natural disasters in this country's history, struck New Orleans. The Maersk sea terminal, along with the entire city of New Orleans, sustained extensive damage as a result of Hurricane Katrina and the consequent failure of New Orleans' levy system. As a result, the terminal facility had to discontinue its operations. The New Orleans Container was not carried forward to Guatemala, but instead, pursuant to mutual agreement, was picked up by Quality Print's cargo underwriters in November 2005 to determine the extent of the damage to the press, if any. An initial joint survey took place on November 9, 2005 at the Cajun Distribution facility in Jefferson, Louisiana. The survey of the container revealed that it contained five individually packaged "skids" of printing press components. The surveyors attending did not find any apparent damage to the printing press components, but recommended prompt

3

testing of the printing press after assembly. Despite
repeated demands thereafter, Quality Print has not provided
Maersk with any information whatsoever as to the condition
of the printing press, testing, or efforts to mitigate any
damage subsequent to this first joint survey in November
2005.

## The Litigation in Panama and Guatemala

On Friday, October 26, 2005, Quality Print
commenced an in rem action against Maersk in the Second
Maritime Court of Panama, claiming a total loss of the
printing machinery carried in the four ocean containers.
The claimed damages included not only the full invoice
value of the machinery ($550,000.00), but also the
replacement cost of the machinery ($1,500,000.00). In
addition, the Complaint alleged numerous consequential
losses, including loss of earnings, financial expenses, and
"moral damages" for a total claim of $8,415,000. Statement
¶ 15. On October 28, 2005, Quality Print filed a second,
in personam action against Maersk based on the same alleged
loss as the in rem action. In connection with these
proceedings, Quality Print obtained an Order of Arrest for
the M/V MAERSK FREMANTLE and the M/V MARGRETHE MAERSK.

4

To avoid arrest of its vessels in Panama, Maersk posted a $10,000,000 cash bond as security for both claims in Panama. While cargo claimants normally accept the posting of security in the form of a Letter of Undertaking from the vessel's P&I Club ("Club LOU"), Quality Print refused to accept a Club LOU unless Maersk agreed to waive the forum selection clause found in the Bill of Lading/contract of carriage. The forum selection clause, as this Court previously held, requires that any action by Quality Print against Maersk in connection with allegations of damages to the printing press must be brought in the Southern District of New York.

Quality Print then commenced a third action in Guatemala on October 30, 2006, relating to the same shipment of printing machinery. Naming Maersk Guatemala S.A. as the defendant, Quality Print cited the booking confirmation as contractual evidence in support of the claim and stated that the shipping company Maersk Sealand "operates and responds in Guatemala under the trade name of Maersk Guatemala, Sociedad Anonima." Declaration of A. Andrew Tsukamoto ("Tsukamoto Decl.") at ¶¶ 22-24. The Guatemala action included a petition for the appointment of

5

an intervenor by the court in Guatemala which permitted the physical occupation and oversight of the Maersk office in Guatemala City. The presence of the intervenor was a significant disruption to the operation of the office. Maersk was subsequently successful in having the order for an intervenor rescinded.

Maersk has incurred, and continues to incur, significant legal fees defending the duplicative and parallel lawsuits brought by Quality Print in both Panama and Guatemala and continues to incur significant damage in connection with the cash security which it was forced to post in Panama in order to avoid the arrest of its vessels transiting the Panama Canal.

On May 27, 2009, the Supreme Court of Justice, Ci of Panama, Civil Bench, issued an opinion on Maersk's appeal of the attachment, finding that the majority of the $10 million attachment was unsupported by the evidence and reducing the amount of the arrest to $783,000.00.

**The Instant Action**

Maersk filed its complaint on April 10, 2006, its amended complaint on August 22, 2006, and obtained an order of attachment on August 31, 2006, in the amount of $650,000. On April 24, 2007, Maersk filed a Second Amended Complaint ("SAC").

The SAC sought (1) an injunction enforcing the forum selection clause in the contract of carriage; (2) damages arising from the commencement of actions in Panama prohibited by a service contract incorporated in the contract of carriage; (3) damages resulting from abuse of process in the actions in Panama; (4) a declaration that Maersk is not liable for any damage to the printing machinery; (5) enforcement of limitations of liability pursuant to the United States Carriage of Goods by Sea Act ("US COGSA"), Pub. L. 16 No. 74-521, 49 Stat. 1207 (1936) (codified at 46 U.S.C. §§ 30701 et seq.); (6) damages for demurrage, storage, and other charges incurred on the containers; (7) attorneys' fees; and (8) indemnity from freight forwarders.

Quality Print moved to vacate the attachment and to dismiss the SAC for lack of jurisdiction and failure to

state a claim. The motion was denied in the April 25
Opinion.

On June 13, 2008, counsel for Quality Print was
granted leave to withdraw. Since that time Quality Print
has not replaced its New York counsel and has defaulted on
all subsequent actions. On June 30, 2008, Maersk served a
Notice to Admit on Defendant Quality Print via Federal
Express. A copy was likewise served on Quality Print's
former attorneys in New York. Quality Print failed to
respond to the Notice to Admit, which is therefore regarded
as fully admitted. See Fed. R. Civ. P. 36(a)(3); Herrera,
143 F.R.D. at 550.

On December 5, 2008, in response to Maersk's
unopposed motion, the Court enjoined Quality Print from
proceeding with litigation on the merits relating to the
shipment of the printing press in any forum other than the
United States District Court for the Southern District of
New York in accordance with the forum selection clause
incorporated in the contract of carriage. See December 5
Opinion at 533-35. Summary judgment was also granted in
favor of Maersk pursuant to COGSA § 4(5) on its fifth cause
of action, thereby limiting Maersk's liability for damages

relating to the New Orleans Container to $2,500. Id. at
532.

Counsel for Maersk sent a copy of the December 5
Opinion by Federal Express and e-mail directly to Quality
Print in Guatemala and also to Carreira-Pitti PC Abogados,
Quality Print's attorneys in Panama. Service by these
means was confirmed as of December 12, 2008. In its cover
letter, Maersk made the following demand:

> In light of the above, Maersk hereby demands that
> any litigation brought by Comercializadora de
> Calidad, S.A. (a/k/a Quality Print), its agents
> and underwriters against Maersk in any
> jurisdiction outside the United States District
> Court for the Southern District of New York,
> including actions presently pending in Panama and
> Guatemala, be discontinued on the merits without
> delay. Maersk further demands that the quantum
> of security obtained by Quality Print in Panama
> immediately be reduced to U.S. $2,500, plus some
> reasonable allowance for interest and costs, in
> accordance with Judge Sweet's holding as to the
> maximum quantum of recoverable damages under the
> US COGSA package limitation.
>
> Please be advised that if Quality Print fails to
> comply with the above demands within fourteen
> (14) days, Maersk will apply to the Court in New
> York for an order holding Quality Print in
> contempt and imposing monetary sanctions, in
> addition to attorneys' fees and costs.

Pallas Aff. Exh. A at 2.

9

Maersk's motion to dismiss and an accompanying
motion for contempt sanctions were marked fully submitted
on March 4, 2009.

## II. DISCUSSION

The applicable standard for summary judgment is
set forth in the December 5 Opinion. See December 5
Opinion at 529. Although Maersk's submission is unopposed,
the Court must undertaken an examination of the evidence to
ensure that it is competent, substantive, avoids
speculation, and supports the causes of action presented
for summary judgment. See D.H. Blair & Co., Inc. v.
Gottdiener, 462 F.3d 95, 109-10 (2d Cir. 2006) (requiring
court to examine submitted evidence even if motion for
summary judgment is unopposed); Morris v. Lindow, 196 F.3d
102, 109 (2d Cir. 1999).

## A. Quality Print Has Breached the Contract

Clause 26 of the Maersk Sealand Bill of Lading
provides, in relevant part:

10

Whenever clause 6.2(d) and/or whenever US COGSA applies, whether by virtue of Carriage of the Goods to or from the United States of America or otherwise, that stage of the Carriage is to be governed by United States law and the United States Federal Court of the Southern District of New York is to have exclusive jurisdiction to hear all disputes in respect therof.

See Tsukamoto Decl. Exh. B.

This Court has previously held that the forum selection clause contained in the Maersk Bill of Lading applies to the claims brought by Quality Print in Guatemala and Panama. See April 25 Opinion at 468 ("Thus, COGSA and the exclusive forum selection clause apply to this dispute."). Quality Print's actions against Maersk in Panama and Guatemala are therefore in direct violation of the forum selection clause contained in the Bill of Lading.

By initiating and pursuing the litigation in Panama and Guatemala, Quality Print has breached the contract with respect to the forum selection clause. Maersk has incurred, and continues to incur, substantial damages relating to the $10 million security it was forced to post to prevent the arrest of its vessels in Panama, as well as substantial attorneys' fees and costs in defending the lawsuits in both Panama and Guatemala.

11

## B.    **The Use of Process by Quality Print Is Abusive**

An abuse of process claim under New York law requires a plaintiff to establish (1) the existence of a regularly issued process, either civil or criminal; (2) an intent to do harm without excuse or justification; and (3) the use of the process in a perverted manner to obtain a collateral objective. O'Bradovich v. Village of Tuckahoe, 325 F. Supp. 2d 413, 434 (S.D.N.Y. 2004); New York Stock Exch., Inc. v. Gahary, 196 F. Supp. 2d 401, 415 (S.D.N.Y. 2002). The essence of a claim for abuse of process is the misuse or perversion of regularly issued process to the accomplishment of an improper purpose. Merrill Lynch Futures, Inc. v. Miller, 686 F. Supp. 1033, 1043 (S.D.N.Y. 1988); Dean v. Kochendorfer, 237 N.Y. 384, 390 (1924). "To show that that regularly issued process was perverted to the accomplishment of an improper purpose is enough" to establish a claim for abuse of process. Klass v. Frazer, 290 F. Supp. 2d 425 (S.D.N.Y. 2003) (quoting Kochendorfer, 237 N.Y. at 390).

Prosser and Keeton on Torts describes abuse of process as a "form of extortion" and notes that writs such

as "attachment, execution, garnishment, or sequestration proceedings" lend themselves to extortionate use. Prosser and Keeton on Torts 899 (W. Page Keeton et al. eds., 5th ed. 1984). Prosser and Keeton further states that the ulterior purpose (collateral objective) may be inferred, "from the way the process was carried out, as for example in the case of excessive attachment from which the inference may be drawn that defendant sought extortionate advantage by tying up all the plaintiff's property when attachment of a small amount would provide sufficient security for a debt." Id.

While courts have traditionally demonstrated a reluctance to entertain abuse of process claims, the circumstances of Quality Print's attachment in Panama, as set forth in Maersk's unopposed submissions, establish Quality Print's intent to harm and its use of the attachment process for an improper collateral objective. In reaching this conclusion, the Court is guided by the decision of the Supreme Court of Justice of Panama, which examined the evidence submitted by Quality Print in support of its $10 million attachment. In finding the vast majority of the attachment to be entirely without support, the court stated:

[T]he rest of the evidence presented with the
petition for arrest and the claim, fails to
support in even the slightest manner the amount
claimed of EIGHT MILLION FOUR HUNDRED FIFTEEN
THOUSAND AMERICAN DOLLARS (US$8,415,000.00).
Under these circumstances, the arrest ordered for
NINE MILLION TWO HUNDRED EIGHTY SEVEN THOUSAND
FIVE HUNDRED AMERICAN DOLLARS (US$9,287,500.00)
far exceeds the amount supported by the
circumstantial or initial evidence presented in
the claim and petition for arrest.

* * *

[T]he evidence provided circumstantially proves
that the amount claimed is SIX HUNDRED SEVENTY
EIGHT THOUSAND AMERICAN DOLLARS (US$678,000.00)
and not the amount sought by the claimant.

Comercializadora de Calidad, S.A. v. A.P. Moller-Maersk

A/S, (Pan. May 4, 2009). Quality Print's attachment was

therefore found to be based on a claim for damages well

over ten times the amount justified by the submitted

evidence. Indeed, the nature of the claims brought by

Quality Print, and its conduct subsequent to the award of

the attachment, support the conclusion that it sought to

artificially inflate its claimed damages, and therefore the

sum attached, for an improper collateral purpose. For

example, despite the clear language of the contract

absolving the carrier of any liability for consequential

14

losses or damages or for loss of profits,[3] Quality Print

claimed over $4.7 million for "loss of earnings."

Defendant also sought to recover both the invoice value of

the machinery ($550,000) as well as the replacement cost of

the machinery ($1.5 million), despite the windfall that

would result from such a "double recovery."[4]  In addition,

---

[3] The Bill of Lading provides, in relevant part:

> 8.1   The Carrier does not undertake that the Goods or any
> documents relating thereto shall arrive or be available at
> any point or place at any stage during the Carriage or at
> the Port of Discharge or the Place of Delivery at any
> particular time or to meet any particular requirement of
> any license, permission, sale contract, or credit of the
> Merchant or any market or use of the Goods and the Carrier
> shall under no circumstances whatsoever and howsoever
> arising be liable for any direct or indirect or
> consequential loss or damage caused by delay.  If the
> Carrier shall nevertheless be held legally liable for any
> such direct or indirect or consequential loss or damage
> caused by such alleged delay, such liability shall in no
> event exceed the Freight paid for the Carriage.

> 8.2   Save as is otherwise provided herein, the Carrier
> shall under no circumstances be liable for direct or
> indirect or consequential loss or damage arising from any
> other cause whatsoever or for loss of profits.

Tsukamoto Decl. Exh. B.  The Court has previously held that the
terms and conditions of the Maersk Bill of Lading are
incorporated into the booking note and thus fully applicable to
this case.  See April 25 Opinion at 464.  In addition, the above
clause has previously been held to be fully enforceable with
respect to claims for delay damages.  See Maersk v. American
Midwest, 97 Civ. 0475 (NRD), 1998 WL 473945, at *7 n.6 (S.D.N.Y.
Aug. 7, 1998).

[4] COGSA, the applicable law under the contract of carriage, provides
that "[i]n no event shall the carrier be liable for more than the
amount of damage actually sustained."  46 U.S.C. § 1304(5); see also
Thyssen Inc. v. S/S EUROUNITY, 21 F.3d 533, 540 (2d Cir. 1994) ("Under
COGSA, a carrier is not liable for more than the amount of damages
actually sustained."); Seguros Banvenez, S.A. v. S/S OLIVER DRESCHER,
761 F.2d 855, 861 (2d Cir. 1985) ("The correct measure of damages,
however, is the amount necessary to put the injured parties in the
exact position they would have been in had there been no breach."
(citation omitted)).

Defendant sought $1 million for "moral damages," the exact nature of which remains unspecified. Defendants have also failed to identify the nature of the alleged damage to the printing press or even confirm that the printing press has ever been tested.

Finally, the Court notes that Quality Print refused to follow the industry convention of accepting a Club LOU as security for its claim, instead insisting that Maersk provide security in the form of a more expensive cash bond. Quality Print offered to accept a Club LOU only if Maersk agreed to waive the forum selection clause contained in the Bill of Lading. As the Court has previously held, the forum selection clause is binding upon the parties and forms the basis an anti-suit injunction against Quality Print prohibiting the litigation of the present dispute in any venue other than the courts of the this District.

In light of Quality Print's pursuit of an unjustifiably large attachment, its failure to offer any evidence suggesting that that the printing press was damaged, and its attempt to induce Maersk to litigate this dispute in the forum of Quality Print's choosing, the Court

16

finds, as a matter of law, that Quality Print utilized the attachment proceedings to improperly interfere with Maersk's business or, at the very least, to improperly induce Maersk to relinquish its contractual right to litigate the dispute in the venue contractually agreed upon by the parties.

Because the unopposed facts establish that Quality Print "sought extortionate advantage" by tying up an unjustifiably large amount of Maersk's property "when attachment of a small amount would provide sufficient security for a debt," Prosser and Keeton at 899, judgment is granted to Maersk with respect to its third cause of action for abuse of process.

## C.   Summary Judgment on Plaintiff's Fourth Cause of Action for Declaratory Judgment Is Granted.

Maersk's fourth cause of action seeks a declaratory judgment that Maersk is not liable for any damage to the printing press at issue.

The Declaratory Judgment Act of 1934 provides that in the event of an actual case or controversy, a court of competent jurisdiction may "declare the rights and other

17

legal relations" of a party "whether or not further relief
is or could be sought." 28 U.S.C. § 2201. An action for
declaratory judgment is ripe when "there is a substantial
controversy, between parties having adverse legal
interests, of sufficient immediacy and reality to warrant
the issuance of a declaratory judgment." Duane Reade, Inc.
v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 388 (2d
Cir. 2005). In addition, the Court must determine "(1)
whether the judgment will serve a useful purpose in
clarifying or settling the legal issues involved; and (2)
whether a judgment would finalize the controversy and offer
relief from uncertainty." Id. at 389.

The actions brought by Quality Print in Panama
and Guatemala leave little doubt that there exists a
substantial and ongoing controversy between the parties
over Maersk's liability for alleged damages to the printing
press. Furthermore, granting declaratory judgment to
Maersk would serve to resolve Quality Print's claim for
damages to the printing press, here, in the proper venue.

The Court has previously held that US COGSA
governs the present dispute. See April 25 Opinion at 468.
Section 1304(2)(d) of COGSA expressly exempts carriers from

18

liability for loss or damage arising out of "Acts of God." 46 U.S.C. App. § 1304(2)(d). By virtue of the unanswered Notice to Admit, Quality Print is deemed to have conceded that any damage to the printing press was the result of Hurricane Katrina, which constitutes an Act of God for purposes of COGSA. Notice to Admit ¶ 14. As a result, Maersk is exempt under COGSA from any liability arising out of allegations of damage to the printing press.[5]

Judgment is granted to Maersk with respect to its fourth cause of action for declaratory judgment.

## C. **The Demurrage Claim Presents a Factual Issue**

According to Maersk, Quality Print's failure to arrange for Customs in Guatemala to release the first three containers of printing machinery renders Quality Print liable for demurrage, storage, and/or other applicable charges on the containers totaling $50,000 in accordance with the terms of the Maersk Bill of Lading.

---

[5] As noted supra, Quality Print has also failed, after more than three years of litigation in three different countries, to produce any evidence as to the location of the printing press, whether it is presently in use and/or whether it has sustained any damage. In the absence of any proof that the printing press was damaged, Quality Print cannot sustain its prima facie case under COGSA. See Transatlantic Marine Claims Agency, Inc. v. M/V OOCL Inspiration, 137 F.3d 94, 98 (2d Cir. 1998) (quoting Vana Trading Co. v. S.S. Mette Skou, 556 F.2d 100, 104 (2d Cir. 1977)).

19

Quality Print has submitted, in connection with
its prior motion to dismiss, a declaration from its
Director, Carlos Garcia, in which he alleges that Maersk
was responsible for Quality Print's failure to take
possession of its containers from Customs following their
discharge from the MAERSK FREMANTLE. See August 29, 2007
Declaration of Carlos Garcia in Further Support of Motion
to Dismiss and Motion to Vacate the Order of Maritime
Attachment ("Garcia Decl.") ¶¶ 9-15. Garcia concedes that
the containers were discharged from the MAERSK FREMANTLE at
the Port of Santo Tomas de Castilla on August 28, 2005, and
that Quality Print did not make any effort to secure the
release of its containers from Customs until some seven
months later on March 29, 2006. However, Garcia also
claimed that Maersk "refused" to disclose the location of
the containers. Id. at ¶ 9. Garcia also stated that
Maersk was dilatory in providing an original bill of
lading, apparently required by Customs, and that it took
him from March 29, 2006, to April 18, 2006, to resolve the
issue with Maersk.

Maersk, relying on the Tsukamoto Declaration,
asserts that it provided its usual and customary arrival

20

notice for the containers.  It also argues that Quality

Print, by retaining the services of Caniz International, an

experienced freight forwarder in Guatemala, could have

located the containers at Customs during the ensuing seven

months.

These dueling affidavits present factual issues

which cannot be resolved on this motion for summary

judgment.  Consequently, Plaintiff's motion for summary

judgment with respect to its sixth cause of action is

denied.

## D.    **Sanctions For Contempt Are Appropriate**

"A party may be held in civil contempt for

failure to comply with a court order if '(1) the order the

contemnor failed to comply with is clear and unambiguous,

(2) the proof of noncompliance is clear and convincing, and

(3) the contemnor has not diligently attempted to comply in

a reasonable manner.'" Paramedics Electromedicina

Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369

F.3d 645, 655 (2d Cir. 2004) (quoting King v. Allied

Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)).  In order

to impose contempt sanctions, "[i]t need not be established

21

that the violation was willful." Id. (citing Donovan v. Sovereign Sec. Ltd., 726 F.2d 55, 59 (2d Cir. 1984)).

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." Paramedics Electromedicina, 369 F.3d at 657 (citing Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989)); see also New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989). While the Court has "broad discretion" to affix the amount of a coercive sanction, a sanction imposed for compensatory purposes must bear some relationship to the amount of damages being incurred as a result of the contemnor's violation of the Court's order. Paramedics Electromedicina, 369 F.3d at 657-58.

Here, sanctions are warranted for both coercive and compensatory purposes, namely, to enforce compliance with the Court's injunction of the foreign proceedings, and to compensate Maersk for the sizable damages which it continues to incur by virtue of Quality Print's refusal to dismiss the actions in Panama and Guatemala.

22

First, the Court's December 5 Opinion clearly and unambiguously "enjoined [Quality Print] from proceeding with litigation on the merits relating to the shipment at issue in this case in any forum other than the United States District Court for the Southern District of New York, in accordance with the forum selection clause incorporated in the contract of carriage." See December 5 Opinion at 527.

Secondly, Quality Print's noncompliance is "clear and convincing." Maersk served a copy of the Court's December 5 Opinion on Quality Print's offices in Guatemala City by international courier on December 12, 2008, and by email on December 11, 2008. Additionally, Maersk served a copy of the Opinion upon Quality Print's attorneys in Panama by courier on December 12, 2008. As set forth in the declarations of Maersk's attorneys in Panama and Guatemala, Quality Print has taken no action whatsoever in these jurisdictions to comply with the Court's order. Following the withdrawal of its New York counsel, Quality Print has failed to engage new counsel and has chosen to disregard all further proceedings before this Court since losing its initial motion to dismiss.

Finally, the Court has been presented with no
evidence that Quality Print has made any attempt to comply
with the Court's anti-suit injunction.

In light of the foregoing, Quality Print is found
to have committed civil contempt for which sanctions are
appropriate.

## E.  Maersk Is Entitled to Attorneys' Fees and Costs

The Bill of Lading specifically stipulates that
the Merchant shall pay attorneys' fees under certain
circumstances.  Specifically, clause 15.2 provides, in
relevant part, that "[t]he Merchant shall be liable for and
shall indemnify the Carrier against all loss, damage,
delay, fines, attorney fees and/or expenses arising from .
. . any other cause whatsoever in connection with the Goods
for which the Carrier is responsible."  Clause 16 further
provides that if the Merchant fails to pay the Freight
(defined as including "all charges payable to the Carrier
in accordance with the applicable Tariff and this Bill of
Lading"), the Merchant "shall be liable also for payment of
service fee or interest due on any outstanding sum,
reasonable attorney fees and expenses incurred in

24

collecting any sums due to the Carrier." Tsukamoto Decl.
Exh. B.

In addition, Quality Print's conduct in this
matter is such that Maersk is entitled to recover its
reasonable attorneys' fees and costs in connection with the
litigation in Panama and Guatemala on the basis of
Defendants' ongoing violation of the Court's anti-suit
injunction. As the Supreme Court has observed:

> [T]here are ample grounds for recognizing that in
> narrowly defined circumstances federal courts
> have inherent power to assess attorney's fees . .
> . . [A] court may assess attorney's fees as a
> sanction for the willful disobedience of a court
> order [and] a court's discretion to determine the
> degree of punishment for contempt permits the
> court to impose as part of the fine attorney's
> fees representing the entire cost of litigation.

Chambers v. Nasco, Inc., 501 U.S. 32, 45-46 (1991)
(internal quotations and cites omitted).

In light of the attorneys' fees provisions
contained in the Bill of Lading and Quality Print's
continued noncompliance with this Court's anti-suit
injunction, Maersk is entitled to judgment on its seventh

cause of action in the amount of legal fees incurred as a
result of the enjoined litigation.

**III. CONCLUSION**

Upon the facts and conclusions stated above, the
motion of Maersk for summary judgment on its second, third,
fourth, and seventh causes of action is granted, and its
motion for sanctions based upon Quality Print's civil
contempt is granted.

As a result of Quality Print's abuse of process
in obtaining grossly excessive security and its continued
civil contempt, Quality Print is assessed damages in the
amount of Maersk's interest costs on the $10 million cash
bond through May 4, 2009, the date on which the Supreme
Court of the Republic of Panama reduced Maersk's cash
security to $783,000. Maersk is also entitled to
continuing interest costs on the remaining cash bond.

In addition, Maersk is entitled to legal fees,
including attorneys' fees and costs, in connection with the
enjoined actions in Panama and Guatemala.

26

It is so ordered.

**New York, N.Y.**
**August** /8 **, 2009**

ROBERT W. SWEET
U.S.D.J.

27